UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RANDY RUSSELL YBARRA,

    Plaintiff,

v.                                       CAUSE NO. 3:18-CV-404-DRL-MGG

WEXFORD MEDICAL, DOCTOR
MARTHAKIS, and DIANE THEWS,

    Defendants.

## OPINION AND ORDER

Randy Russell Ybarra, a prisoner without a lawyer, filed a second amended complaint. *See* ECF 1, 26, and 115. The first 58 paragraphs are the same as the original complaint, the first amended complaint, and the second amended complaint. When the court screened the two prior complaints, it reached the same conclusion about which claims from those paragraphs could proceed and which had to be dismissed. ECF 3 and 46. Mr. Ybarra has not presented a reason to change the analysis of those first 58 paragraphs. Therefore, the court will not modify its previous rulings as to them:

> [Mr.] Ybarra plausibly alleged Nurse Practitioner Diane Thews was deliberately indifferent to his need for medical treatment of his chronic eczema and psoriasis in violation of the Eighth Amendment by refusing to provide him with Minerin Creme, a non-prescription moisturizer, for the treatment of his chronic eczema and psoriasis even though he is indigent and unable to purchase it or an alternative from commissary. He plausibly alleged Wexford Medical has a policy or practice of denying needed non-prescription medical products to indigent inmates in violation of the Eighth Amendment. Finally, he plausibly alleged Dr. Marthakis violated the Eighth Amendment by denying him medical treatment for glass in his right foot. As previously explained (ECF 3), none of the other allegations in the original complaint (all of which are repeated in the amended complaint) state a claim.

ECF 46 at 1-2. *See also Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("the law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination").

A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In the second amended complaint, Mr. Ybarra now alleges Dr. Nancy Marthakis was deliberately indifferent because she prescribed hydrocortisone cream rather than minerin cream for his psoriasis and eczema. For medical professionals to be held liable for deliberate indifference to a serious medical need, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The U.S. National Library of Medicine explains that hydrocortisone "[temporarily] relieves itching associated with minor skin irritations, inflammation and rashes due to: eczema, psoriasis." *Hydrocortisone*, National Institutes of Health, available at https://dailymed.nlm.nih.gov/dailymed. Minerin cream is not a medication and is not included in the U.S. National Library of Medicine. Rather, it is "a moisturizer to treat or prevent dry, rough, scaly, itchy skin and minor skin irritations." *Minerin Cream*, WebMD, available at https://www.webmd.com/. As such, it was not deliberately indifferent for Dr. Marthakis to have prescribed hydrocortisone rather than minerin cream.

Mr. Ybarra argues hydrocortisone should not have been prescribed for a year because he does not believe it is a long-term treatment. Hydrocortisone provides only temporary relief and has limitations generally on its daily use. *See Hydrocortisone*, National Institutes of Health, available at https://dailymed.nlm.nih.gov/dailymed. However, there is no indication it cannot be used for a year or more. *Id.* Though Mr. Ybarra disagrees with Dr. Marthakis' decision to prescribe hydrocortisone, a

mere disagreement with a medical professional about the appropriate course of treatment does not establish deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Mr. Ybarra alleges Dr. Marthakis prescribed coal tar shampoo even though it had not successfully controlled his symptoms when previously prescribed by another doctor. However, topical psoriasis treatments can stop working—or start working even if they failed in the past. *See Topical Treatments for Psoriasis*, WebMD, available at https://www.webmd.com/skin-problems-and-treatments/psoriasis/topical-treatments-psoriasis#1. "Coal tar can be very effective. Some people see complete clearing with coal tar and long remissions." *Psoriasis Treatment: Coal Tar*, American Academy of Dermatology, https://www.aad.org/diseases/ psoriasis/psoriasis-coal-tar#. Therefore, it was not deliberately indifferent to have tried coal tar again though it had not worked before. When it proved unsuccessful again, she prescribed an alternative (requested by Mr. Ybarra) that was not approved by Wexford. This was not deliberately indifferent and does not state a claim against Dr. Marthakis. Because Mr. Ybarra is already proceeding on a claim against Wexford based on these facts, this is not a new claim against it.

Mr. Ybarra alleges Dr. Marthakis falsely told him he could receive non-prescription products from commissary if he signed a form. He signed the form, but commissary would not give him those items for free. To the extent he is trying to sue because she lied to him, mere verbal abuse does not state a claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Though verbal abuse that creates a risk of physical injury is actionable, it is not plausible to infer that these statements placed him at risk. *See Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). To the extent there was any risk of physical injury, it was because of the lack of access to the non-prescription products. However, Mr. Ybarra is already proceeding on a claim against Wexford based on not receiving non-prescription products from medical. These new allegations do not change that claim nor state an independent claim against Dr. Marthakis.

3

Mr. Ybarra alleges Dr. Marthakis retaliated against him for prosecuting this lawsuit against her by having prison officials drug test him. "To prevail on his First Amendment retaliation claim, [the plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.

*Dawes v. Walker*, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Here, it is not reasonable to believe a prisoner of ordinary firmness would be deterred from litigating a claim to obtain healthcare because he was subjected to a single drug test. Prisoners are regularly subjected to random drug testing. *Whitman v. Nesic*, 368 F.3d 931, 935 (7th Cir. 2004) ("Being made to stand naked twenty minutes as part of a random drug-testing policy is not a 'sufficiently serious' condition of confinement to rise to the level of a constitutional violation."). The allegation that this drug test was not otherwise justifiable does not state a claim.

None of the new paragraphs in the second amended complaint have added or modified any of the claims on which Mr. Ybarra was granted leave to proceed based on his first amended complaint. This case will therefore proceed with the same claims and defendants. Because all defendants have

4

already filed an answer in response to these claims, it is unnecessary for them to file another answer to the second amended complaint. *See* ECF 52.

Finally, Mr. Ybarra filed a fifth motion asking for preliminary injunctive relief. *See* ECF 7, 72, 80, 97, and 122. This time he asks for treatment "for the eczema and psoriasis issues on his scalp." ECF 122 at 1. He also asks for the defendants to submit photographs of his scalp. *Id.* A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

> To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. If a plaintiff makes such a showing, the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties. Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted.

*Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (citations and quotation marks omitted).

Mr. Ybarra is proceeding on a claim against Wexford Medical for permanent injunctive relief to obtain needed non-prescription medical products when he is indigent as required by the Eighth Amendment. This is the only claim in this case that is related to this preliminary injunction request. Therefore, only Wexford Medical needs to respond to this motion because there is no chance of success on the merits against either of the other two defendants.

For these reasons, the court:

(1) GRANTS Randy Russell Ybarra leave to proceed against Diane Thews in her individual capacity for compensatory and punitive damages for denying him medical treatment for his chronic eczema and psoriasis in violation of the Eighth Amendment;

5

(2) GRANTS Randy Russell Ybarra leave to proceed against Wexford Medical for compensatory and punitive damages for enforcing a policy or practice of denying needed non-prescription medical products to indigent inmates in violation of the Eighth Amendment;

(3) GRANTS Randy Russell Ybarra leave to proceed against Wexford Medical for injunctive relief to obtain needed non-prescription medical products when he is indigent as required by the Eighth Amendment;

(4) GRANTS Randy Russell Ybarra leave to proceed against Dr. Marthakis in her individual capacity for compensatory and punitive damages for denying him medical treatment for glass in his right foot in violation of the Eighth Amendment;

(5) GRANTS Randy Russell Ybarra leave to proceed against Dr. Marthakis in her official capacity for injunctive relief to obtain medical treatment for glass in his right foot as required by the Eighth Amendment;

(6) DISMISSES all other claims;

(7) LIFTS the stay;

(8) FINDS, pursuant to 42 U.S.C. § 1997e(g)(2), that the defendants need not file an answer to the second amended complaint (ECF 115) because the claims and defendants are unchanged; and

(9) GRANTS Wexford Medical until **January 9, 2020** to file a response to the preliminary injunction motion (ECF 121).

SO ORDERED.

December 12, 2019            *s/ Damon R. Leichty*
                                                Judge, United States District Court